UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY E. TOMBS,

        Plaintiff,

    v.

WARDEN RON RACKLEY, et al,

        Defendants.

No.  2:13-cv-1341 JAM KJN P

ORDER

I.  Introduction

     Plaintiff is a former state prisoner proceeding without counsel.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis.  This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.  Plaintiff's amended complaint is now before the court.

II.  Screening

     The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

////

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

III.  Plaintiff's Allegations

Plaintiff submitted ten different amended complaints among his 233 page filing, all referencing the instant case number, but each addressing different alleged violations by different

2

individuals.  (ECF No. 17, *passim*.)  In this court's prior screening order, plaintiff was advised that "[u]nrelated claims against different defendants must be pursued in multiple lawsuits."  (ECF No. 8 at 9 (emphasis added).)  That is, each complaint alleging unrelated causes of action must be brought in a separate lawsuit, filed as a "complaint," rather than as an "amended complaint" and not bearing the case number for this action.  Moreover, plaintiff must either pay the filing fee or submit an application to proceed in forma pauperis with each separate complaint filed as a separate action.  Because of the nature of plaintiff's filing, his amended complaint must be dismissed, and plaintiff is granted leave to file a second amended complaint that complies with this order.  However, because it appears that many of plaintiff's allegations contained in the proposed amended complaints do not state cognizable civil rights violations, the court will, on this one occasion, evaluate the issues raised in each amended complaint.

It is difficult to discern plaintiff's causes of action because he again includes narrative statements concerning perceived abuses, and again fails to include charging allegations, supported by plausible facts, as to each individual named as a defendant.  However, it appears that in his ten separate proposed amended complaints, plaintiff raises various allegations that occurred at different times, including vague allegations of retaliation (ECF No. 17 at 1-11); deliberate indifference to medical needs (ECF No. 17 at 12-14; 73-83); interference with mail (ECF No. 17 at 66-73; 98-114; 124-41; 167-232); allegations regarding searches and a verbal threat (ECF No. 17 at 84-97); and claims that defendants verbally induced plaintiff and his cellmate to get in a fight (ECF No. 17 at 115-123).  One amended complaint included a combination of these claims. (ECF No. 17 at 142-66.)  The court screens plaintiff's allegations as follows.

IV.  Discussion

A.  Rule 18 and 20

A basic lawsuit is a single claim against a single defendant.  Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant.  Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the

action." Id.  However, unrelated claims that involve different defendants must be brought in separate lawsuits.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is not only intended to avoid confusion that arises out of multiple claim, multiple defendant lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act.  28 U.S.C. § 1915(g).

The Court advises plaintiff that each claim that is raised in his second amended complaint must be permitted by either Rule 18 or Rule 20.  Plaintiff may state a single claim against a single defendant.  Plaintiff may then add any additional claims to his action that are against the same defendant under Rule 18.  Fed. R. Civ. P. 18.  Plaintiff may also add any additional claims against other defendants only if those claims arise from the same transaction, occurrence, or series of transactions as his original claim.  Fed. R. Civ. P. 20(a)(2).  Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

B. Rule 8

A complaint must contain "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count."  Fed. R. Civ. P. 10(b).

The function of the complaint is not to list every single fact relating to plaintiff's claims. If plaintiff files a second amended complaint, he must set forth his claims in a simple, concise, and direct manner in order to meet the requirements of Rule 8.

C. Individualized Inquiry into Causation

As noted above, plaintiff failed to include charging allegations as to each named defendant.  Plaintiff does not clearly allege how each individual defendant is responsible for the harm alleged.  "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

4

1    an act which he is legally required to do that causes the deprivation of which [the plaintiff

2    complains.'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588

3    F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on

4    the duties and responsibilities of each individual defendant whose acts or omissions are alleged to

5    have caused a constitutional deprivation ." Id.

6         Here, plaintiff does not provide clear allegations showing how each individual defendant's

7    actions caused the constitutional deprivation alleged. In at least one of the amended complaints,

8    plaintiff set forth the allegations on one page, and then on another page listed the names of each

9    defendant he contends is liable. (See, e.g., ECF No. 17 at 5.) Plaintiff does not clearly allege

10   how each of the individual defendants participated in an affirmative act or omission giving rise to

11   his constitutional allegation. Accordingly, such claims are not cognizable.

12        D. Retaliation

13        In a number of his proposed amended complaints, plaintiff makes vague reference to a

14   claim for retaliation, which was not included in his original complaint. Specifically, plaintiff

15   alleges that while he was incarcerated at DVI, an individual named Jordan Keith Wallace was

16   working there as a plumber. Plaintiff claims that ten years ago, Wallace was employed as a Yuba

17   County parole officer. While Wallace was plaintiff's parole officer, Wallace used "unlawful

18   force" "with handcuffs," "beat" plaintiff, and was fired from his job. (ECF No. 17 at 2, 4.)

19   Plaintiff wrote a letter to the Warden and CDCR concerning what Wallace did to plaintiff ten

20   years ago, and plaintiff alleges that after staff read the letter, "things got worse" and "they started

21   abusing me more." (ECF No. 17 at 3.) Plaintiff claims Wallace has a lot of friends that work for

22   the CDCR, and appears to allege that Wallace used other officers to retaliate against plaintiff.

23   (ECF No. 17 at 3, 4.)

24        "Prisoners have a First Amendment right to file grievances against prison officials and to

25   be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

26   (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First

27   Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva

28   v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of

5

1   First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took

2   some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

3   that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action

4   did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559,

5   567-68 (9th Cir. 2005).

6        In order to state a claim under 42 U.S.C. § 1983 for retaliation, plaintiff must establish

7   that he was retaliated against for exercising a constitutional right, and that the retaliatory action

8   was not related to a legitimate penological purpose, such as preserving institutional security.

9   Rizzo v. Dawson, 778 F.2d 527 (9th Cir. 1985).  Plaintiff must demonstrate a specific link

10  between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65

11  F.3d 802, 807-08 (9th Cir. 1995) (there must be probative evidence to establish a crucial link in

12  the logical chain required to support retaliation; timing alone is insufficient).  Plaintiff is required

13  to show that the exercise of his First Amendment rights was chilled, although not necessarily

14  silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

15  2000) (plaintiff promptly contested the charge against him and won); see also Rhodes, 408 F.3d at

16  569.

17       Here, plaintiff does not allege that he was engaged in protected conduct, and the factual

18  allegations do not support a claim based on retaliation or the First Amendment.  Thus, plaintiff

19  should not renew his retaliation claim in any subsequent civil rights complaint.[1]

20  ////

21

22  [1]  Plaintiff also claims that the Warden failed to respond to plaintiff's complaint letter.  There is
    no constitutional right to a prison administrative appeal or grievance system; consequently, a
23  prison official's failure to process grievances is not actionable under § 1983.  See Ramirez v.
    Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (prisoner's claimed loss of liberty interest in processing
24  of administrative appeals does not violate due process because prisoners lack separate
    constitutional entitlement to specific prison grievance system).  Further, while a prisoner retains a
25  First Amendment right to petition the government for redress of grievances as to the
    constitutional claim underlying an administrative grievance, he possesses no constitutional right
26  to a response to his grievance from prison officials.  See Flick v. Alba, 932 F.2d 728, 729 (8th
    Cir. 1991) (prisoner's First Amendment right of access to courts is not compromised by prison's
27  refusal to entertain grievance).  Thus, to the extent that plaintiff alleges the warden did not
    respond to his letter of complaint, such claim is not cognizable.
28

E. <u>Deliberate Indifference to Serious Medical Needs</u>

Two of plaintiff's amended complaints address medical issues.  (ECF No. 17 at 12-14; 73-83.)  First, plaintiff alleges that he was given shots for Hepatitis A and B, but that he was refused treatment for his Hepatitis-C.  (ECF No. 17 at 13.)  Second, plaintiff alleges that while he attempted to obtain reading glasses, Dr. Mitchell prescribed eyeglasses that plaintiff could not see out of, and when he returned to pick up the new glasses with different lenses, the legs of the glasses were bent.  (ECF No. 17 at 73-74.)  Third, plaintiff claims he was wrongfully denied his wheelchair.

To state a section 1983 claim for a constitutional violation based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297-99 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853, 854 (9th Cir. 1992).  In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06.)  A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).

Here, plaintiff's allegations as to defendant Mitchell fail to demonstrate deliberate indifference to plaintiff's serious medical needs.  Plaintiff was provided glasses, and it is not uncommon for lenses to be adjusted following the first prescription, nor is it uncommon for the frames to need adjustment to a particular patient's head.  Plaintiff again alleges no facts rising to the level of deliberate indifference in connection with his claims concerning eyeglasses.  Plaintiff should not renew this claim in any subsequent civil rights complaint.

1    Plaintiff raises a new allegation regarding his treatment for Hepatitis.  Plaintiff alleges that
2    he wanted treatment for his Hepatitis C, but was only provided shots for Hepatitis A and B.
3    However, plaintiff included no allegations demonstrating any defendant acted with a culpable
4    state of mind in connection with this claim.  Moreover, "a difference of opinion between a
5    prisoner-patient and prison medical authorities regarding treatment does not give rise to a[§ ]1983
6    claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  To establish that such a
7    difference of opinion amounted to deliberate indifference, the prisoner "must show that the course
8    of treatment the doctors chose was medically unacceptable under the circumstances" and "that
9    they chose this course in conscious disregard of an excessive risk to [the prisoner's] health."  See
10   Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  Thus, plaintiff should only renew his
11   claim concerning Hepatitis C if he can allege facts demonstrating that an individual was
12   deliberately indifferent to plaintiff's serious medical needs.  Any such claim must be brought in a
13   new action.

14   Plaintiff claims that his wheelchair was wrongfully confiscated.  However, exhibits
15   provided by plaintiff reflect that his mobility impairment was not properly documented, and
16   based on a review of plaintiff's health record, physical findings, and observation form, Physician
17   Assistant P. Safi determined that plaintiff's disability status of "not confirmed" as previously
18   documented by Family Nurse Practitioner P. Mallory on December 1, 2011, remained unchanged.
19   (ECF No. 17 at 36.)  Safi noted that plaintiff was observed by custody staff to ambulate with no
20   difficulty using his cane, and thus the wheelchair was discontinued as not medically warranted.
21   (ECF No. 17 at 36-37.)  The documents provided by plaintiff demonstrate that plaintiff has a
22   difference of opinion with medical authorities as to whether plaintiff requires a cane and a
23   wheelchair for mobility rather than just a cane.  As set forth above, a mere difference of opinion
24   does not demonstrate deliberate indifference to plaintiff's serious medical needs.[2]

---

25   [2]  As plaintiff was informed in the prior screening order, plaintiff's allegations fail to state a claim
26   under the Americans with Disabilities Act ("ADA").  Plaintiff again mentions the ADA in
     connection with his wheelchair claim.  However, plaintiff was not denied the use of his
27   wheelchair because of his disability.  The treatment, or lack of treatment, concerning plaintiff's
     medical condition does not provide a basis upon which to impose liability under the ADA.
28   Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits

1    Therefore, plaintiff should not renew his wheelchair claim in any subsequent civil rights

2    complaint.

3             F.  Allegations re Searches

4             Plaintiff alleges that on March 21, 2012, upon entering the chow hall, defendant

5    Macdougal said something to plaintiff that he did not understand, and then searched plaintiff by

6    putting his arms under plaintiff's arms and throwing them up in the air with Macdougal's arms.

7    (ECF No. 17 at 85.)  Upon exiting the chow hall, defendant Macdougal shoved his hand down the

8    side of plaintiff's wheelchair, and when plaintiff leaned forward, defendant Macdougal shoved

9    his hand up under plaintiff's buttocks.  (ECF No. 17 at 85.)  Plaintiff went back to his building

10   officer, and while he was telling Officer Rodriguez what Macdougal had done, Macdougal came

11   in and made threats to plaintiff.  (ECF No. 17 at 86.)  Plaintiff states:  "The threats were made

12   was [Macdougal is] coming back to this building [to] search it for weapons and tell every inmate

13   in the building you told me there was weapons in the building."  (ECF No. 17 at 86.)

14            Here, plaintiff did not renew his claim of sexual abuse, which was addressed in the prior

15   screening order.  (ECF No. 8 at 5-6.)  Plaintiff's current allegations, without more, fail to state a

16   cognizable civil rights claim.  As plaintiff was previously informed, verbal threats, without more,

17   are not sufficient to state a constitutional deprivation under § 1983.  Gaut v. Sunn, 810 F.2d 923,

18   925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do allegations that

19   naked threat was for purpose of denying access to courts compel contrary result).  Plaintiff alleges

20   no facts suggesting defendant Macdougal improperly searched plaintiff.  Plaintiff does not allege

21   that defendant made good on his threat, or that plaintiff suffered harm from the threat.  Thus,

22   plaintiff's allegations as to searches and a verbal threat by defendant Macdougal fail to state a

23   cognizable civil rights violation, and should not be included in any subsequent civil rights

24   complaint.

25   ////

26   ////

27

28   discrimination because of disability, not inadequate treatment for disability.")

G.  <u>Eighth Amendment - Deliberate Indifference to Safety</u>

While not entirely clear, it appears that plaintiff alleges that defendant Mondoza, Croom and Patterson set plaintiff up to fight with his cellmate Lairmore in order to make plaintiff lose his wheelchair.  (ECF No. 17 at 116.)  This claim was not included in the original complaint.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994); <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150-51 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff's allegations as to this claim are too vague and conclusory for the court to determine whether plaintiff can allege facts demonstrating that each defendant knew of and disregarded a substantial risk of serious harm to plaintiff in connection with these allegations.  However, if plaintiff can allege such facts, he may renew this claim in a new civil rights complaint.

H.  <u>Interference with Mail</u>

Plaintiff renewed his claims concerning mail interference and tampering.  However, not all of plaintiff's allegations concerning interference with his mail are clear.  For example, in one amended complaint, plaintiff states that unidentified individuals at DVI would open his letters and read them, allegedly to "stop plaintiff from getting help."  (ECF No. 17 at 67.)  Specifically, plaintiff claims that a letter he sent to the warden was removed from the mailbox.  (<u>Id.</u>)  In a different complaint, plaintiff alleges that it took six months for him to gain approval to send trust account funds to his girlfriend, delaying her Christmas gift.  (ECF No. 17 at 98-99.)  Plaintiff also alleges that he received no mail from his family and friends and they received no mail from him

10

1    during the two years he was housed at DVI.  (ECF No. 17 at 99; 124.)  Plaintiff claims that

2    defendant Grave would remove plaintiff's outgoing mail from the box and take it to the

3    bathroom, and would slip plaintiff's incoming mail under plaintiff's door but the mail would just

4    be the envelope with no contents inside.  Plaintiff alleges that the Bible studies were taken out of

5    the envelope and plaintiff was just given the envelope.  (ECF No. 17 at 124.)  Plaintiff also

6    alleges that defendant Gail Boyd erroneously returned books and letters from his Bible studies,

7    Global University School, and the Reader Service Center.  (ECF No. 17 at 169.)  Plaintiff claims

8    that defendant Boyd intentionally whited out parts of plaintiff's name so that incoming mail

9    would be returned.  (ECF No. 17 at 169-70.)

10        Prisoners enjoy a First Amendment right to send and receive mail.  Witherow v. Paff, 52

11   F.3d 264, 265 (9th Cir. 1995).  Nonetheless, prison officials may institute procedures for

12   inspecting legal mail, which includes mail sent between attorneys and prisoners, see Wolff v.

13   McDonnell, 418 U.S. 539, 576-77 (1974), and mail sent from prisoners to the courts, see Royse v.

14   Superior Court, 779 F.2d 573, 574-75 (9th Cir. 1986).  While the deliberate delay of legal mail

15   which adversely affects legal proceedings presents a cognizable claim for denial of access to the

16   courts, see Jackson v. Procunier, 789 F.2d 307, 311 (5th Cir. 1986), isolated incidents of mail

17   interference without any evidence of improper motive or resulting interference with the right to

18   counsel or access to the courts do not give rise to a constitutional violation.  See Davis v. Goord,

19   320 F.3d 346, 351 (2d. Cir. 2003) (isolated incident of mail tampering usually insufficient to state

20   claim); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (isolated incident of opening one

21   piece of legal mail in error does not rise to level of constitutional violation).  Moreover, there

22   must be a "delicate balance" between prisoners' First Amendment rights and the discretion given

23   to prison administrators to govern the order and security of the prison.  Thornburgh v. Abbott,

24   490 U.S. 401, 407-08 (1989).  Prison officials have more leeway to regulate incoming than

25   outgoing mail because of the greater security risks inherent in material coming into a prison.  Id.

26   at 413.

27   ////

28   ////

i. Incoming Mail

As stated above, prisoners enjoy a First Amendment right to send and receive mail. Witherow, 52 F.3d at 265 (citing Thornburgh, 490 U.S. at 407). If prison officials withhold mail, a prisoner has a due process right to receive notice that the incoming mail is being withheld. See Frost v. Symington, 197 F.3d 348, 353-54 (9th Cir. 1999). A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. Thornburgh, 490 U.S. at 413.

Prison officials have a responsibility to forward mail to inmates promptly. Bryan v. Werner, 516 F.2d 233, 238 (3d Cir. 1975). Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment. Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996). However, a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights. Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband).

In this case, plaintiff alleges that he received no communications from his family and friends during his two year incarceration at DVI, and did not receive any responses to his Bible studies. Plaintiff identifies defendants Grave and Boyd as correctional officers who interfered with plaintiff's incoming mail. Plaintiff's allegations as to defendants Grave and Boyd are sufficient to state a cognizable civil rights claim. If plaintiff intends to pursue his claims alleging interference with his incoming mail, plaintiff should raise such claims in one second amended complaint, specifically identifying each defendant he alleges interfered with his incoming mail, and identifying what mail, including from his family and friends, that he claims he did not receive.

////

////

ii. <u>Outgoing Mail</u>

With respect to outgoing correspondence from prisoners to non-prisoners, an exception to the <u>Turner</u> standard applies.  Because outgoing correspondence from prisoners does not, by its very nature, pose a serious threat to internal prison order and security, there must be a closer fit between any regulation or practice affecting such correspondence and the purpose it purports to serve.  <u>Thornburgh</u>, 490 U.S. at 411-12.  Censorship of outgoing prisoner mail is justified if the following criteria are met:  (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."  <u>Procunier v. Martinez</u>, 416 U.S. 396, 413 (1974), <u>overturned on other grounds by</u> <u>Thornburgh</u>, 490 U.S. at 413-14.

Plaintiff does not plead sufficient facts to establish that his First Amendment rights have been violated in connection with outgoing mail by defendants.   Plaintiff cites two unrelated incidents -- one incident where a letter to the warden was removed from the box, and a separate incident where mail to his girlfriend was delayed.  Moreover, in the latter incident, part of the delay was due to procedures required to withdraw funds from plaintiff's inmate trust account.  These two specific allegations, without more, fail to state a cognizable claim.

However, plaintiff may be able to state a claim as to outgoing mail to his family and friends, if he can allege specific facts demonstrating that he presented to prison officials letters on a regular basis that were never received by the intended recipients over a two year period.  Plaintiff must also identify the individuals responsible for such interference.

Accordingly, plaintiff has failed to demonstrate that the interception and delay of his outgoing mail constitutes a violation of a constitutionally protected liberty interest.  <u>Denton v. Bowman</u>, 2008 WL 755798, *1 (S.D. Cal. March 19, 2008) (prisoner failed to show that delay in processing his outgoing mail constituted a violation of his liberty interest).  Plaintiff is granted leave to amend and plead sufficient facts to state a claim for interference with his outgoing mail in a second amended complaint filed in this action.

////

1    V.   Conclusion

2         As set forth above, because of the manner in which plaintiff filed his 233 page amended

3    complaint, the amended complaint must be dismissed.  Plaintiff is granted leave to file a second

4    amended complaint in this action concerning defendants' alleged interference with plaintiff's mail

5    at DVI.  Should plaintiff decide to pursue any of the other unrelated, but potentially cognizable,

6    claims that the court addressed above, plaintiff must raise those claims by filing a new complaint

7    in a new action.

8         If plaintiff chooses to file a second amended complaint concerning his interference with

9    mail claims, plaintiff must demonstrate how the conditions complained of have resulted in a

10   deprivation of plaintiff's federal constitutional or statutory rights.  See Ellis v. Cassidy, 625 F.2d

11   227 (9th Cir. 1980).  Also, the second amended complaint must allege in specific terms how each

12   named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is

13   some affirmative link or connection between a defendant's actions and the claimed deprivation.

14   Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980);

15   Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory

16   allegations of official participation in civil rights violations are not sufficient.  Ivey v. Board of

17   Regents, 673 F.2d 266, 268 (9th Cir. 1982).

18        In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

19   make plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended

20   complaint be complete in itself without reference to any prior pleading.  This is because, as a

21   general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375

22   F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second amended complaint, the original

23   pleading no longer serves any function in the case.  Therefore, in a second amended complaint, as

24   in an original complaint, each claim and the involvement of each defendant must be sufficiently

25   alleged.  However, plaintiff is not obligated to re-file his exhibits.  The exhibits that plaintiff

26   submitted on November 12, 2013, are now part of the court record and may be referred to by any

27   party.

28   ////

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's amended complaint is dismissed.

2.  Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the instant order, the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint must bear the docket number assigned this case, must be labeled "Second Amended Complaint," and must be filed on the form provided by the court; plaintiff must file an original of the second amended complaint; failure to file a second amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

3.  The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint pursuant to 42 U.S.C. § 1983.

Dated:  April 21, 2014

/tomb1341.14b

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

15